## GREENLEAF and others *v.* Dows & Co.

### *(Circuit Court, D. Minnesota. September, 1881.)*

1. ELEVATOR RECEIPTS—SURRENDER CERTIFICATES—CONVERSION.

   In a suit in equity by holders of elevator receipts against a vendee of the operator of the elevator, to whom the operator had given certain surrender certificates, *held,* that such vendee is liable for the value of the wheat which he had removed and sold, when there is not enough wheat in the elevator to satisfy the holders of the receipts and the certificates.

In Equity.

In September, 1879, one H. H. Harris engaged in the business of operating a grain elevator at Litchfield, Minnesota, a station on the St. Paul, Minneapolis & Manitoba Railway, and while so engaged he received from numerous persons, for storage and handling for hire, large quantities of wheat, and he also purchased wheat on his own account, which was stored in said elevator. To persons depositing wheat for storage and handling he issued receipts and tickets in the following form:

"H. H. Harris.

"Ticket No. 1368.

"LITCHFIELD, Oct. 15, 1879.

"Account of Andrew Johnson or bearer, forty-seven 45-60 bushels No. 2 wheat, to be carried at the convenience of the railroad company to St. Paul or Minneapolis for storage and delivery; insured against loss or damage by fire.

"H. H. HARRIS, Inspector."

He also sold grain from the elevator on his own account, and among the purchasers from him of such grain were the respondents David Dows & Co., who received, as evidence of title to the grain so purchased, certain certificates in the following form, called "surrender certificates."

"No. ———.

"LITCHFIELD ELEVATOR, LITCHFIELD, Oct. 8, 1879.

"This is to certify that ——— has surrendered elevator tickets for 2,000 bushels No. 2 wheat, free on track.

"2,000 No. 2 wheat, for shipment to ———.

"H. H. HARRIS, Owner."

Harris received in store from the several complainants a quantity of wheat, aggregating 2,284 26-60 bushels, and issued therefor tickets in the form above given. He sold to respondents David Dows & Co., or to their assignors, to be taken from said elevator, 18,440 50-100 bushels, for which "surrender certificates" were issued in the form above given.

In October, 1879, Harris absconded, leaving in the elevator 3,601 22-60 of bushels wheat only—not enough to satisfy the holders of the wheat tickets and the surrender certificates above described.

Respondents David Dows & Co. brought an action of replevin to recover all the wheat remaining in the elevator; and having given bond to answer for the value of the same as required by statute, it was delivered to them and by them converted to their own use. Upon the hearing of the replevin suit the court held that in order to settle all the conflicting claims against the wheat it was necessary to bring a bill in equity. See 1 McCrary, 434. This bill was accordingly filed. The prayer is that respondents David Dows & Co. be required to bring into court the cash value of the wheat, and this court will distribute the same according to equity among the several claimants.

It is insisted by way of defence—(1) That complainants have an adequate remedy at law, and therefore no right of action in equity; and (2) that the wheat tickets relied upon are not sufficient evidence of title to any part of the wheat in controversy.

Complainants insist that they hold the evidence of title recognized by the statute of Minnesota; that respondents have no title; and that the suit is properly brought by bill in equity.

The statute of Minnesota to be considered is an act entitled "An act to regulate the storage of grain," approved March 3, 1876. Gen. Laws of Minn. (8th Session,) 96. Section 1 of that act provides that whenever any grain shall be delivered for storage to any person, association, or corporation, such delivery shall in all things be deemed and treated as a bailment, and not as a sale of the property so delivered, notwithstanding such grain may be mingled by such bailee with the grain of other persons, or shipped, or removed from the warehouse, elevator, or other place where the same was stored.

Sections 2 and 5 are as follows:

Sec. 2. Whenever any grain shall be deposited in any warehouse, elevator, or other depository for storage, the bailee thereof shall issue and deliver to the person so storing the same a receipt or other written instrument, which shall in clear terms state the amount, kind, and grade of the grain stored, the terms of storage, and, if advances are made, the words "advance made," which receipts shall be *prima facie* evidence that the holder thereof has in store with the party issuing such receipt the amount of grain of the kind and grade mentioned in such receipt; and any warehouseman, proprietor of an elevator, or bailee, who shall issue any receipt or other written instrument for any grain received for storage, which shall be false in any of its statements, shall be guilty of a misdemeanor, and shall upon conviction be punished by fine not exceeding $300, or imprisonment in the county jail not exceeding six months, or by both fine and imprisonment.

Sec. 5. Warehouse receipts given for any goods, wares, and merchandise, grain, flour, produce, or other commodity stored or deposited with any warehouseman, or other person or corporation in this state, or bills of lading or receipts for the same when in transit by cars or vessel to any such warehouseman or other person, shall be negotiable, and may be transferred by indorsement and delivery of such receipt or bill of lading; and any person to whom the said receipt or bill of lading may be transferred, shall be deemed and taken to be the owner of the goods, wares, or merchandise therein specified, so as to give security and validity to any lien created on the same, subject to the payment of freight and charges thereon: provided, that all warehouse receipts or bills of lading which shall have the words "not negotiable" plainly written or stamped on the face thereof, shall be exempt from the provisions of this act.

*G. L. & C. E. Otis,* for complainants.

*O'Brien & Wilson,* for respondents.

McCRARY, C. J.   1. The several parties to this suit claim title to a part or all the wheat in controversy, and the first inquiry is as to the validity of their claims.   The complainants claim under instruments known as wheat tickets or receipts, in the form first above set out.   The evidence is that they were given to actual depositors of wheat.   They state, as required by the statute, in plain terms, the kind and grade of the grain stored, and the terms of storage; that is to say, the grain was stored "to be carried at the convenience of the railroad company to St. Paul or Minneapolis for storage and delivery."   From this I understand it was stored in the elevator to await transportation.   These receipts are, therefore, in my opinion, such instruments as under the statutes of Minnesota, quoted above, constitute *prima facie* evidence of title to the amount and grade of grain mentioned therein as deposited in a warehouse or elevator.

The respondents David Dows & Co. claim under instruments

quite different in form and substance from those held by complainants. The form of the certificates under which respondents claim is set forth in the statement above. They are known as "surrender certificates," and they set forth that the parties named therein have "surrendered elevator tickets" for a certain quantity of wheat "free on the track." Harris was in the habit of buying and selling wheat, in addition to the business of receiving wheat for storage and shipment, and it appears that "surrender certificates" were issued to persons to whom he made sales of wheat in the elevator. At all events, such certificates were executed to represent the wheat sold to respondents or their assignors.

There is no doubt that the proof shows a sufficient sale of wheat by Harris to respondents, provided the wheat so sold was the property of Harris. The question here is whether these surrender certificates are competent evidence of title to grain in the warehouse as against third parties; or, in other words, are they the evidence of title to grain deposited with a warehouseman which is recognized by the statute of Minnesota above quoted? The statute describes with clearness and accuracy the instrument which shall be *prima facie* evidence of title to such grain. It must be issued and delivered to the person storing the grain, and must state the amount, kind, and grade of the grain stored, the terms of storage, etc. It is clear under this statute that the receipt, to be evidence of title, must be issued by the warehouseman to an actual depositor of grain. It applies only to the receipt or ticket which is issued when the grain is deposited in the warehouse or elevator. The depositor retains the title to a like quantity and grade. The statute contemplates the mixing of the grain of different depositors, and therefore does not provide for the return of the identical grain deposited. The warehouseman has no power to issue certificates or receipts to persons who make no deposit of wheat, and to make such certificates or receipts a lien on wheat actually deposited by others and for which other receipts have been given. The assignee of a deposit receipt or wheat ticket has the assignor's title to the wheat, but the surrender certificates held by respondents are not assignments of wheat tickets or receipts. They are instruments unknown to the statute. They state that certain holders of elevator tickets have surrendered them, and that they represent a given number of bushels of wheat "free on the track" for shipment, etc. It does not appear from such a paper that any wheat remains stored in the warehouse or elevator; much less that the

tickets, which under the statute represent the title, are outstanding. When the holder of the statutory evidence of title to grain in a warehouse or elevator "surrenders" it to the warehouseman, and the latter certifies the fact, there is nothing in the statute to give his certificate the force and effect which formerly belonged to the surrendered instrument. Inasmuch as the respondents deposited no grain in the elevator, they could only purchase grain therein as against actual depositors by buying outstanding certificates representing such grain, and taking an assignment thereof. They did not do this. In no instance did they take an assignment of the evidence of title. It follows that their claims must be postponed to those of actual depositors who present the evidence of title recognized by the statute.

2. A question is made as to whether, upon the facts already stated, the case is one of equitable cognizance. It is insisted that, inasmuch as there is grain enough to satisfy all of complainant's demands, they have severally a right to proceed at law, and therefore no right to proceed in equity. It is true that when the action of replevin was before this court, it was supposed by the court that all the certificates were equally liens upon the grain in the elevator, and that none of the claimants were entitled to payment in full. The question as to the effect of the "surrender certificates" was not then raised, and the court assumed that they were warehouse receipts or certificates, evidencing title, within the meaning of the statute. Although, upon further consideration, it now appears this was a mistaken assumption, it does not follow that the jurisdiction in equity fails. It is still a case for discovery, and an accounting between the parties. Without a discovery and an accounting, the court could not know that the complainants are entitled to payment in full. If one of them had sued alone at law, how could the court or a jury have determined whether he was entitled to recover the whole amount claimed. To determine that question the presence of other depositors of grain was necessary, or at least proper, and an accounting as between all such depositors, if not the only, was certainly the most convenient and adequate mode of proceeding. If the remedy in equity is more complete and adequate than that at law, and especially if it prevents a multiplicity of suits, the equitable jurisdiction can be maintained even if there is a concurrent remedy at law. 1 Story, Eq. Jur. § 457. Nor would it make any difference if it were admitted that the result of the discovery and accounting is to develop the fact, not before known, that the complainants might

have sued at law. "In all cases where a court of equity has jurisdiction for discovery, and the discovery is effectual, that becomes a sufficient foundation upon which the court may proceed to grant full relief." In other words, where the court has legitimately acquired jurisdiction over the cause for the purpose of discovery, it will, to prevent multiplicity of suits, entertain also the suit for relief. Id. § 456. It would be a plain violation of this rule to remit the several complainants at this stage of the proceedings to their remedy at law. If it were necessary to discuss this question further, the jurisdiction in equity might, I think, be maintained for the purpose of preventing a multiplicity of suits, or under the head of "apportionment and contribution of a common fund among all those who have a title to a portion of it." Id. § 469 *et seq.*

3. Respondents David Dows & Co., having converted the wheat in question to their own use, are liable to the holders of warehouse receipts or wheat tickets such as the law recognizes for the reasonable value of the wheat represented by such instrument, not exceeding, of course, the total value of the wheat actually seized and appropriated; but before final decree is entered it is proper to inquire whether all the holders of such instruments are before the court. It is also deemed proper to take the opinion of a master upon the question of the reasonable value of the wheat. For these purposes the case will be referred to a master, to be named by Judge Nelson, who will inquire and report at the next term:

(1) Whether all persons interested in said wheat are before the court in this case; and (2) the master will report his conclusions from the evidence as to the reasonable cash value of the wheat claimed by complainants at the time it was taken by respondents upon the writ of replevin, and also its highest market value at any time between that time and July 1, 1881.

If deemed necessary the said master may take further testimony touching these questions.